HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. J. H. LEWIS.

No. 2000. Decided June 22, 1910.

1.—Interstate Commerce—Connecting Railways—Liability of Initial Carrier— Federal Statute—Jurisdiction of State Court.

The state courts have jurisdiction over an action to determine the liability, upon through interstate shipments over connecting railways, imposed upon the initial carrier by section 20, of the Act of Congress of June 29, 1906 (the Carmack Amendment to Interstate Commerce Law) though the liability of such carrier is limited to losses on its own line, and it has made safe delivery to the next connecting road, and the goods were lost on another line. Galveston, H. & S. A. Ry. Co. v. Wallace, 117 S. W., 169. (P. 457.)

2.—Carriers—Interstate Commerce Act—Constitutional Law.

Section 20 of the Act of Commerce of June 29, 1906, making the carrier receiving property for interstate transportation over its own and connecting roads liable for losses occurring on other lines than its own is not unconstitutional as interfering with the carrier's lawful freedom of contract or as a taking of its property without compensation in contravention of the 5th amendment to the Constitution of the United States. (P. 457.)

**3.—Carriers—Interstate Shipment—Contract—Liability of Initial Carrier.**

A contract by the railway receiving goods for interstate transportation over its own and connecting lines and collecting the through freight charges, but stipulating "as a condition precedent to the issuance of this through bill of lading and guarantee of through rate, that the liability of such . . . company is limited to its own line, shall cease and determine upon delivery to a connecting carrier . . . and in case of loss . . . that carrier alone shall be liable in whose (actual) custody such articles were at the time of such loss," shows a receipt of the property for through transportation within the terms of the Act of Congress of June 29, 1906 (amendment to Interstate Commerce Law) by which such initial carrier was made liable for loss by a connecting carrier, despite its stipulation to the contrary. (Pp. 456–458.)

Questions certified ‘from the Court of Civil Appeals for the Fifth District, in an appeal from Limestone County.

*Baker, Botts, Parker & Garwood* and *Williams & Bradley,* for appellant.—Section 9 of the Interstate Commerce Act of February 4, 1887, insofar as it confers jurisdiction, is special in its application and gives the courts of the United States exclusive jurisdiction of all suits for the recoveries which are provided for therein, and which would not exist independent of said Act. Plaintiff's cause of action, as alleged by him, had no existence independent of the said Acts of Congress, but depends absolutely and wholly upon said Acts for its existence and validity. This Act, like the Act of February 17, 1875 (sec. 711, U. S. Comp. Stat., 1901, p. 577, 4 Fed. Stat. Ann., 493), specially conferring jurisdiction, is not in any way controlled or affected by the amendment of August 13, 1888 (U. S. Comp. Stat. 1901, p. 508, 4 Fed. Stat. Ann., 265), conferring general, concurrent jurisdiction upon the Circuit Court of the United States and the State courts over certain civil cases at law or in equity. In re Hohost, 150 U. S., 660; United States v. Mooney, 116 U. S., 107; Price v. Abbott, 17 Fed., 506. Article 3, section 2, of the Constitution (9 Fed. Stat. Ann., 74), is a mandatory order to Congress to provide a Federal tribunal for "all cases" arising under the Constitution and laws of the United States, and the treaties entered into by them. The manner in which the jurisdiction should be extended is left to the sound discretion of Congress. A distinction was made in that clause between this character of case and controversies between citizens of different States, and from the language of the clause it was held that Congress could exclude from the jurisdiction of the Circuit Court certain cases coming in the latter. Martin v. Hunter, 1 Wheat., 334. Within the meaning of this article the words "suit," "cause" and "action" are held to be convertible terms. Cohens v. Virginia, 6 Wheat., 407.

At the very inception of interstate commerce legislation it was thought by Congress to be more expedient to require all causes of action arising under that legislation, that is, the new rights created thereby, to be litigated in Federal tribunals, where uniformity and harmony of interpretation and application could be had. Congress could readily foresee the necessity of such an arrangement respecting all traffic and rate questions. In fact, it has been held that as to a rate issue the Federal jurisdiction is necessarily exclusive, notwith-

standing it is not so provided by the law, and notwithstanding the fact that the common law afforded a similar remedy that had been enforceable in the State courts prior to the amendment giving the Interstate Commerce Commission power to establish rates; and notwithstanding the provisions of section 22, saving· to shippers all rights preexisting under the common law or the· statutes of the several States.    A conflict of decisions and jurisdiction between the State and Federal courts could not otherwise have been prevented. Railway Co. v. Cotton Oil Co., 204 U. S., 426; Moore on Carriers, p. 938, sec. 15; Howard Supply Co. v. C. & O. Ry., 162 Fed., 188; Meeker v. Ry., 162 Fed., 354; Railway Co. v. Moore, 98 Texas, 302.

The rule seems to be that when Congress creates a new right and provides for its enforcement in the Federal courts, without mentioning the right to proceed in State courts, such remedy is exclusive in its nature and the State courts have no jurisdiction.    Shelden v. Railway Co., 105 Fed., 785; Copp v. Railway Co., 43 La. Ann., 513, 26 Am. St.· Rep., 199, 12 L. R. A., 725; Fitzgerald v. Fitzgerald, 41 Neb., 467; Swift v. Railway Co., 58 Fed., 858; · Van Patton v. Railway Co., 74 Fed., 981; Edmonds v. Railway Co., 80 Fed., 79; Carlisle v. Railway Co., 168 Mo., 652.

All of the new provisions creating rights, imposing penalties and providing procedure, harmonize entirely with this theory and constitute one harmonious plan.    Such, it seems, is the effect of the decision of the Supreme Court in the case of Railway Co. v. Moore, 98 Texas, 302.    Special attention is invited to the recent case of Howard v. Railway Co., 162 Fed., 188, where the Carmack Act is considered.    See Parsons v. Railway Co., 167 U. S., 455, and authorities there cited.    The authorities hold that prior to the Act of 1906 exclusive jurisdiction existed in the Federal courts over all new rights created by the Act of 1887, and all its amendments, including the Elkins Act of 1903. .

The court erred in so construing the Carmack amendment of 1906 to the Interstate Commerce Act, contained in section 20 thereof, as to make it fix upon the initial carrier liability for the loss of goods being transported from a point in one State to a point in another State, when such loss resulted from the independent wrong of some other carrier, to which the goods were delivered for further transportation towards their destination, notwithstanding the initial carrier did not contract for the through transportation of such goods, but specially contracted with the shipper that it was undertaking only to transport such goods to the termination of its own line on the route to their destination, under an express agreement that it should not be held responsible for the fault of any other carrier into whose hands the goods might pass.    The effect of the construction so placed upon said statute was to deprive the defendant of its property without due process of law, to deny it the equal protection of the law, and to unduly abridge its liberty to make reasonable and lawful contracts as it deemed necessary in the conduct of its business; and said Act, so construed, is therefore in violation of the Fifth Amendment to the Constitution of the United States. Fifth Amendment, U. S. Constitution; Railway Co. v. Jackson, 99

Texas, 343; Railway Co. v. Short, 51 S. W., 261; Railway Co. v. Turner, 42 Texas Civ. App., 532; Railway Co. v. Williams, 77 Texas, 121; Railway Co. v. McCann, 174 U. S., 586; Sash Co. v. Railway Co., 177 Mo., 641; Grain Co. v. Railway Co., 178 Mo., 480; McCann v. Eddy, 27 S. W., 541; Schneck v. Railway Co., 40 Pac., 840; Venning v. Railway Co., 49 Am. & Eng. R. R. Cases (N. S.), 673; Short v. Railway, 45 N. Y., 524.

An Act of Congress, which requires a common carrier to receive goods to be transported from a point in one State to a point in another State, and further requires that such carrier shall be liable for the loss thereof caused by the fault of any connecting or other carrier, to which the goods may be delivered, or over whose line they may be carried, notwithstanding it is expressly agreed between the initial carrier and the shipper that such carrier only undertakes to transport said goods to the end of its own line on the route to their destination, and that it shall, in no event, be liable for loss or damage to such goods after they are delivered by it to the next connecting carrier, is invalid, in that it attempts to deprive such carrier of the liberty of making reasonable and lawful contracts in the management of its business as a common carrier; and, further, because it deprives the carrier of its property without due process of law, in violation of the Fifth Amendment to the Constitution of the United States. Turnpike Co. v. Sandford, 164 U. S., 392; Attorney-General v. Railway Co., 160 Mass., 64, 22 L. R. A., 120; Railway Co. v. Smith, 173 U. S., 692; Pennoyer v. Neff, 95 U. S., 714; Scott v. McNeal, 154 U. S., 45; Venning v. Railway Co., 49 A. & E. R. R. C. (N. S.), 673; Stockyards Case, 212 U. S., 132; Railway Co. v. Railway Co., 110 U. S., 680; Express Co. v. Kountze, 8 Wall., 342; Inman v. Railway Co., 14 Texas Civ. App., 39; Railway Co. v. Interstate Com. Com., 200 U. S., 356; Railway Co. v. Murphy, 196 U. S., 203; Railway Co. v. Jones, 155 U. S., 338; Railway Co. v. Mfg. Co., 16 Wall., 324; Railway Co. v. Stuart, 63 S. E., 415; Employers Liability Cases, 207 U. S., 463; Reagan v. Farmers L. & T. Co., 154 U. S., 399; Railway Co. v. Lynch, 97 Texas, 30; Allgeyer v. La., 165 U. S., 578; Lochner v. New York, 198 U. S., 53; Smith v. Ames, 169 U. S., 466; Adair v. U. S., 208 U. S., 161; State v. Loomis, 115 Mo., 307, 21 L. R. A., 789; Coal Co. v. People, 147 Ill., 66, 22 L. R. A., 340; Godcharles v. Wigeman, 113 Pa., 431; Commonwealth v. Perry, 115 Mass., 117, 14 L. R. A., 328; Railway Co. v. Moore, 98 Texas, 302; Minnesota v. Barber, 136 U. S., 313; Mill Co. v. Railway Co., 44 Am. & Eng. R. R. (N. S.), 184.

*Doyle, Jackson & Harper,* for appellee.—The State courts have jurisdiction and can invoke the Act of Congress of the United States of June 29, 1906, to recover damages for the loss of property by a railroad company in an interstate shipment, and said railroad can not limit its liability to its own line, when the shipment is accepted to go from one State to another, and the charges for the whole distance collected by the initial carrier. Galveston, H. & S. A. Ry. Co. v. Piper, 115 S. W., 107; International & G. N. Ry. Co.

v. Wilbourne, 115 S. W., 111; Galveston, H. & S. A. Ry. Co. v. Wallace, 117 S. W., 169; Galveston, H. & S. A. Ry. Co. v. Crow, 117 S. W., 170.

This Act of Congress, regulating commerce, is valid and binding upon railroads engaged in interstate commerce, and should be upheld. Same authorities; Gutierrez v. El Paso & N. E. Ry. Co., 102 Texas, 378.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals of the Fifth Supreme Judicial District. The statement and questions of law for our determination are as follows:

"The above styled and numbered cause is now pending before this court upon appeal properly taken and perfected by Houston & Texas Central Railroad Company, a common carrier, corporation, from a judgment recovered against it, in favor of J. H. Lewis, in the County Court of Limestone County, Texas, in the sum of one hundred seventy-two and 50/100 dollars.

"The suit was to recover of it, as the initial carrier, the value of certain household goods which were shipped by Lewis over its line of railway, from Kosse, Texas, to Decatur, Alabama, and routed from Kosse to Sherman, Texas, and from thence over the lines of Texas & Pacific Railway Company and others to their destination; they were properly and promptly carried and delivered by the initial carrier to Texas & Pacific Railway Company at Sherman, Texas, but were never delivered to plaintiff at Decatur or elsewhere; but it is not further shown where the goods were lost than that they were not lost on the line, or in the custody, of the initial carrier.

"The facts are undisputed, and besides the facts stated above, show that Lewis shipped his goods, as stated, and paid the freight charges; the goods were worth $172.50; he made no inquiries and knew nothing of the way the goods were to be routed; defendant's line of railway is entirely within the State of Texas, and the goods were routed from Kosse, Texas, to Sherman, Texas; thence over Texas & Pacific Railway and other lines to Decatur, Alabama; the contract of shipment recited the receipt of the goods for transportation and agreed to transport same from Kosse, Texas, to Sherman, Texas, and there deliver them in like good order to its next connecting carrier for consignee's account.

"The goods were accepted upon the following terms and conditions, agreed to by Lewis:

"'It is expressly stipulated, as a condition precedent to the issuance of this through bill of lading and guarantee of through rate, that the liability of the said Houston & Texas Central Railroad Company is limited to its own line, shall cease and determine upon delivery to a connecting common carrier, of the articles herein mentioned, and in case of loss, damage or injury to any of said articles, that carrier alone shall be liable in whose (actual) custody said articles were at the time of such loss, damage or injury.'

"Plaintiffs pleaded a partnership between Houston & Texas Central Railroad Company and the other connecting carriers interested

in the carriage of the goods, and it denied same under oath, and there was no evidence offered upon that issue.

"Question 1. Did the State court have jurisdiction under the law to try and determine the cause of action?

"Question 2. Did the State court have jurisdiction to try and determine this cause of action under and by virtue of the Act of Congress regulating interstate and foreign commerce and the amendments thereto?

"Question 3. If so, did the trial court properly construe such Act and its amendments as fixing absolute liability upon the initial carrier of interstate commerce for loss caused by some subsequent carrier, where the initial carrier specially contracted against such liability? If answered affirmatively,

"Question 4. Is such Act and its amendments, as so construed, repugnant to the Constitution of the United States, and especially the Fifth Amendment?"

In the cases of Galveston, Harrisburg & San Antonio Ry. Co. v. Wallace, 117 S. W., 169, and of the same Company v. Crow, 117 S. W., 170, it was held, in effect, that an affirmative answer to the first and second questions was proper, and we approved this ruling by denying writs of error in the cases. We are fortified in this construction by an opinion by the Supreme Court of Kentucky in the case of Louisville & Nashville R. R. Co. v. Scott, 118 S. W., 990. It is held in that case also that the Act of Congress of June 29, 1906, commonly known as the Carmack amendment, is a valid regulation of interstate commerce and does not take private property for public purposes. In this view we concur and this answers the fourth question certified to us by the Court of Civil Appeals.

The third question presents more difficulty. Section 20 of the Carmack amendment reads as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed."

In the statement of the contract of shipment it is said: "The suit was to recover of it, as the initial carrier, the value of certain household goods which were shipped by Lewis over its line of railway, from Kosse, Texas, to Decatur, Alabama, and routed from Kosse to Sherman, Texas, and from thence over the lines of Texas & Pacific Railway Company and others to their destination; they were properly and promptly carried and delivered by the initial carrier to Texas & Pacific Railway Company at Sherman, Texas, but were never delivered to plaintiff at Decatur or elsewhere; but it is not further shown where the goods were lost than that they were not lost on the line, or in the custody, of the initial carrier." This

reads like the contract was to ship from Kosse to Sherman and thence to deliver to the Texas & Pacific Railway Company and there is other language which indicates the same construction. But it is further stated that the shipper paid the through freight. And it is also stated in the certificate that the goods were accepted upon the following terms agreed to by Lewis: "It is expressly stipulated, as a condition precedent to the issuance of this through bill of lading and guarantee of through rate, that the liability of the said Houston & Texas Central Railroad Company is limited to its own line, shall cease and determine upon delivery to a connecting common carrier of the articles herein mentioned, and in case of loss, damage or injury to any of said articles that carrier alone shall be liable in whose (actual) custody said articles were at the time of such loss, damage or injury." The words "the issuance of this through bill of lading and guarantee of through rate" show clearly that it was for a through transportation, and we think that the Carmack amendment applies. We therefore answer the third question in the affirmative.