TEXAS CENTRAL RAILWAY COMPANY ET AL. v. HICO OIL MILL.

Decided November 10, 1910.

1.—Carrier—Interstate Shipment—Connecting Lines.

A contract to transport to the terminus of the carrier's line and deliver to its connecting line cattle consigned to a point in another State and to be transported over several roads, as shown by waybills to destination, guaranteeing a through rate, but limiting the carrier's liability to injuries on its own line, was governed by the Federal statute (Act of Cong., June 29, 1906, U. S. Comp. Stats., Supp., 1907, p. 892) and the initial carrier was liable for injury or loss by delay through the negligence of the connecting lines.

2.—Same—Delay—Concurring Negligence.

Where part of the delay causing loss of a more favorable market was due to negligence by the initial carrier, and part to that of the connecting line, a case of concurring negligence was presented, rendering them jointly liable.

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*W. D. Smith, Chas K. Lee* and *J. A. Kibler,* for appellant Texas Cent. R. Co.—The Texas Central Railway Company was liable only for such damages, if any, as resulted to plaintiffs from delays on its own line, and was not jointly liable with the M., K. & T. Ry. Co. of Texas, or any other line. Rev. Stats., 1194, art. 23a; T. & P. Ry. Co. v. Stell, 61 S. W., 980; G. C. & S. F. Ry. Co. v. Cushney, 95 Texas, 309; I. & G. N. Ry. Co. v. Jones, 26 Texas Civ. App., 167; T. & P. Ry. Co. v. Cushney, 64 S. W., 795; T. & P. Ry. Co. v. Lynch, 97 Texas, 25; St. L. I. M. & S. Ry. Co. v. White & Co., 76 S. W., 947; T. & P. Ry. Co. v. Murtishaw, 34 Texas Civ. App., 447; S. A. & A. P. Ry. Co. v. Dolan, 85 S. W., 302.

*Chapman & Lockett, Spoonts, Thompson & Barwise* and *Coke, Miller & Coke,* for appellant Missouri, Kansas & Texas Ry. Co. of Texas.

*Stephens & Miller,* for appellee.—The Texas Central being the initial carrier and this being an interstate shipment, under written contracts for through shipment, in which the through freight rate was guaranteed, the attempted limitation of its liability in said contracts was void. Fed. Stats. Ann., Supp., 1909, p. 273; Houston & T. C. Ry. Co. v. Lewis, 103 Texas, 452; Southern Pac. Co. v. Meadors, 129 S. W., 170; I. & G. N. Ry. Co. v. Wilbourne, 115 S. W., 111; M., K. & T. Ry. Co. v. Carpenter, 52 Texas Civ. App., 585; Gulf, C. & S. F. Ry. Co. v. Moore, 98 Texas, 302; G., H. & S. A. Ry. Co. v. F. A. Piper Co., 52 Texas Civ. App., 568; Riverside Mill v. Atlantic C. L. R. Co., 168 Fed., 987; Kansas City Southern Ry. Co. v. Carl, (Ark.), 121 S. W., 932, and cases there cited.

HODGES, ASSOCIATE JUSTICE.—Appellee was the owner of 246 head of cattle which it desired to ship to East St. Louis to be placed upon the market. They were loaded into twelve cars, and on the evening

of February 8, 1907, were delivered to the Texas Central Railway Company, one of the appellants, for shipment. This suit was instituted by the appellee against that company, the Missouri, Kansas & Texas Railway Company of Texas, and the Missouri, Kansas & Texas Railway Company to recover damages for delay and also for injuries resulting in the death of three of the animals. The cattle had been fed for some time on cotton seed meal and hulls, and were very fat. They left Hico at 5 o'clock p. m. on Friday, but did not reach their destination till the following Tuesday morning. Three of them died in transit. The testimony showed that the cattle were started in time to have reached St. Louis for the Monday's market had they been transported within the usual time. Appellee claims as damages the loss of Monday's market, which is shown to have been some higher than that of the day following, shrinkage in weight due to delay in transportation, and the value of three head that died in transit. A trial before a jury resulted in a verdict in favor of the appellee for $60 against the Missouri, Kansas & Texas Railway Company for the value of one steer killed, and against the Texas Central Railway Company and the Missouri, Kansas & Texas Railway Company of Texas jointly for $715. The two last named companies have appealed, and have filed separate briefs in this court.

The contention of the appellant Texas Central Railway Company, presented under various forms in the different assigned errors is, substantially; that the verdict against it is unsupported by the evidence. It is contended that this company having undertaken the transportation of the cattle only to Waco, the end of its line, under a contract in which its liability is limited to its own line, and there being no evidence of any negligence or injury during that time, there was no basis for the verdict. Instead of a formal bill of lading the shipment in this instance was made under what is termed a "live stock contract," possessing all of the essentials of a through bill of lading. The contract contains, among others, the following provision: "This agreement, made between the Texas Central Railroad Co., of the first part, and Hico Oil Mill, of the second part, witnesseth, That whereas the said Texas Central Railroad Co. transports live stock as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties thereto; Now, therefore, for the consideration and mutual covenants and conditions herein contained the said first party will transport for the said second party the live stock described below, and the parties in charge thereof, as herein provided, viz: Ten car loads of beef cattle said to contain two hundred head of such stock, from the station where this contract is executed to Waco, Texas, station, the end of the line of road operated by the party of the first part on the route over which such stock are way-billed, there to be transferred to the railway company over which said live stock are way-billed for further transportation by said railway company, the said stock being way-billed through and consigned to Evans Snyder Buel Co. at Natl. Stk. Yds., Ill., station, and the party of the first part covenants and

agrees that the freight charge from point of shipment to final destination shall be only the sum of tariff, the same being a through rate, lower than the local rates which might be lawfully charged by the party of the first part, and for and in consideration of which through rate and the guaranty thereof by the party of the first part, and the other covenants and agreements on the part of the party of the first part, as herein contained, the party of the second part hereby covenants and agrees as follows:" etc. This contract, we think, comes within the meaning of the Federal Statute making the initial carrier liable for the negligent acts of any connecting carrier over whose road the freight may be transported. Act Cong., June 29, 1906, C 3591, 34 Stat., 584 (U. S. Com. St. Supp., 1907, p. 892); H. & T. C. Ry. Co. v. Lewis, 129 S. W., 594; St. L. S. W. Ry. Co. v. Ray, 127 S. W., 281; T. & P. Ry. Co. v. Townsend, 106 S. W., 760. The statute referred to above provides: "That any common carrier, railroad or transportation company, receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." "That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." If this act be applicable, and we think it is, the liability of the Texas Central Railway Company should not be made to depend solely upon whether or not it was the author of the negligence which caused the damages sustained. The testimony shows that after the delays for which one or both of appellants were responsible, the cattle could not have reached their destination in time to be placed upon the market on Monday; that on Tuesday there had been a decline of about 10 cents on the hundred in market price. It is further shown that such stock would shrink in weight from 50 to 60 pounds per head within a day's time. According to testimony about which there appears to be no dispute, there was a delay of three hours at Walnut Springs, a station on the Texas Central Railway between Hico and Waco. An effort was made on the part of that appellant to excuse this delay on the ground that it was the result of an unavoidable accident, that an engine sprung a leak, and that this could not have been foreseen by the exercise of proper care. There are other circumstances detailed, which are relied upon to excuse the delay.

But we think the evidence in opposition to this was sufficient to justify the jury in attributing that delay, in part at least, to the negligence of the appellant. It is further shown that there is no physical connection between the lines of the Texas Central Railway Company and that of the Missouri, Kansas & Texas Railway Company of Texas at Waco, and that their depots are about a mile and a half apart; that freight hauled by the Texas Central Railway Company destined to be transported over the Missouri, Kansas & Texas Railway Company of Texas, is transferred by the Cotton Belt, for which the latter company receives a switching fee. The train of cattle in question arrived at Waco and at 12:45 a. m. Saturday was placed by the Texas Central Railway Company upon the track of the Cotton Belt for delivery to the Missouri, Kansas & Texas Railway Company of Texas, and was receipted for by the agent of the latter company at 1:40 a. m. the same day. But the stock did not leave Waco till 4:35 a. m. This shows a delay of about four hours at that point, which is unaccounted for by either of the appellants, each claiming that the other was responsible for it. The testimony was conflicting as to what, according to the custom of the two roads, was a delivery by one to the other under the circumstances existing in this instance; the witnesses on the part of the Texas Railway Company claiming that a delivery to the Cotton Belt for transfer was a delivery to the Missouri, Kansas & Texas Railway Company of Texas according to their custom, while the witnesses testifying in behalf of the Missouri, Kansas & Texas Railway Company of Texas stated that according to the custom the delivery was not complete until their company had received the freight upon its own track. The state of the evidence was such that a finding either way by the jury would be justified. The jury might have held the Texas Central Railway Company responsible for the delay at Waco, or it might justly have attributed it to the Missouri, Kansas & Texas Railway Company of Texas. The greater part of the damages claimed in this case is attributed to delays. The three hours lost at Walnut Springs added to the four hours at Waco were sufficient, according to the testimony of Morris, the man who accompanied the shipment, to cause him to miss Monday's market. Assuming that the Texas Central Railway Company is responsible for one, and the Missouri, Kansas & Texas Railway Company of Texas for the other, we have a case of concurring negligence, rendering both of the appellants jointly liable. 29 Cyc., 487, and cases cited. The contention of appellants that no negligence is shown to support the verdict is without merit.

Appellant Missouri, Kansas & Texas Railway Company of Texas also complains of the admission of certain testimony as to when the cattle were receipted for and delivery made to it by the Texas Central Railway Company. The first objections urged are that the testimony was hearsay and not the best evidence. The bills of exception show that the witnesses purported to testify to facts within their knowledge, and we think the testimony was properly admitted. The other objection on the ground

that the testimony challenged was the statement of a conclusion, or opinion, is equally without merit.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.