## BURD v. SAN ANTONIO SOUTHERN RY. CO. et al. (No. 449–3947.)

(Commission of Appeals of Texas, Section B. May 14, 1924.)

**1. Carriers ⬦177(3)—Plaintiff suing for damages from delay in interstate shipment held not deprived of remedy against initial carrier alone by allegations of joint liability with connecting carriers.**

Plaintiff averring, in suit against several carriers for damages from negligent delay in interstate shipments, that initial carrier "for itself" accepted and undertook to transport shipments, *held* not deprived of right, under Cummins Amendment (U. S. Comp. St. § 8604a), to recover full damages from initial carrier, by allegations that it was also acting jointly with and as agent of other carriers.

**2. Carriers ⬦184—Allegation of issuance of through bill of lading unnecessary to fix liability of initial carrier under Cummins Amendment.**

Issuance of through bill of lading need not be alleged to fix liability against initial carrier for damages from delay in interstate shipments under Cummins Amendment (U. S. Comp. St. § 8604a).

**3. Pleading ⬦63—Cummins Amendment need not be pleaded.**

Cummins Amendment (U. S. Comp. St. § 8604a) need not be pleaded in action against initial and connecting carriers for damages from delay in interstate shipments.

**4. Election of remedies ⬦7(1)—Shipper suing initial and connecting carriers held not to have elected to look to each for damages caused by it.**

Shipper suing initial and connecting carriers for damages from delay in interstate shipments *held* not to have elected to look to each for damages caused by it nor to have abandoned remedy against initial carrier alone under Cummins Amendment (U. S. Comp. St. § 8604a).

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Judgment ⬦⟶241—Full judgment may be recovered against each of several joint contractors or tort-feasors sued jointly.**

While only one full satisfaction may be had of several joint contractors or tort-feasors sued jointly, their joinder does not prevent full judgment against each, though some who may be required to respond only partly are joined with one who may be. required to respond in full.

**6. Commerce ⬦⟶8(13)—State laws inconsistent with Cummins Amendment no longer in force.**

State laws inconsistent with Cummins Amendment (U. S. Comp. St. § 8604a) which renders initial carrier of interstate shipment liable for all damage from negligent delay by connecting carriers, whether resulting in physical injury to freight or not, are no longer in force.

**7. Carriers ⬦⟶32(2)—Liability of initial carrier for delay in shipment by connecting carriers of interstate shipment not subject to waiver.**

Liability of initial carrier for damages caused by connecting carriers of interstate shipment under Cummins Amendment (U. S. Comp. St. § 8604a) and valid clauses of bill of lading are not ordinarily subject to waiver by carrier or shipper.

**8. Carriers ⬦⟶173—Bill of lading for 'interstate shipment is through contract by initial carrier, and measures liability of connecting carriers to shipper.**

Under ·Cummins Amendment (U. S. Comp. St. § 8604a) connecting carriers are agents of initial carrier as to interstate shipments, and bill of lading is through contract by initial carrier, which measures liability of connecting carriers to shipper, who may have recourse against each for its own. defaults as well as against initial carrier for entire obligation.

**9. Carriers ⬦⟶173 — Through bill of lading conclusively deemed to have been issued by initial carrier under Cummins ·Amendment.**

Under Cummins Amendment (U. S. Comp. St. § 8604a), through bill of lading is conclusively deemed to have been issued by initial carrier of interstate shipment, though ‑not in fact issued.

**10. Carriers ⬦⟶185(1)—Presumption that loss occurs in hands of last carrier.**

Presumption is that loss occurs in hands of last carrier, unless ‑otherwise proved.

**11. Judgment ⬦⟶256(5)—Judgment against initial carrier only held not contrary to verdict.**

Judgment against initial carrier of interstate shipment *held* not contrary to verdict that shipments were made over its line and those of connecting carriers, and were damaged by negligent delay in transit by one or more of them, though jury, without mentioning initial carrier, found that connecting carriers should respond in damages; initial carrier being liable for total damages as matter of law.

**12. Indemnity ⬦⟶13(3)—Bona fide payment of entire damages by initial carrier conclusive between it and connecting carriers.**

Bona fide payment by initial carrier on judgment against it for total damages from delay in interstate shipment is conclusive as to amount between it and connecting carriers under Cummins Amendment (U. S. Comp. St. § 8604a), and leaves to further adjustment between them only allocation of responsibility for loss.

**13. Indemnity ⬦⟶13(1)—Procedure expressed in Cummins Amendment as to adjustment of liability of initial and connecting carriers must be followed though hardship may result.**

Provision of Cummins Amendment (U. S. Comp. St. § 8604a) that initial carrier may recover amount ·it is required to pay for damage‑ to interstate shipment from connecting carriers on whose lines loss was sustained is expression of broad public policy in respect to regulation of rates, contracts, internal administration and management of interstate carriers, and courts must abide by procedure therein expressed, though hardship to both initial and connecting carriers may result.

**14. Damages ⬦⟶228—Judgment for excessive amount held cured by remittitur.**

Judgment for amount in excess of sum of items of damages to several shipments delayed in transit as found by jury *held* cured by remittitur filed within time required by Rev. St. art. 2012, though remittitur, by reason of clerk's omissions, was not legally sufficient.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by J. L. Burd against the San Antonio Southern Railway Company and others. Judgment for plaintiff was reversed by the Court of Civil Appeals (246 S. W. 1060), and he brings error. Reversed in part and affirmed in part, and district court judgment reformed and affirmed as reformed.

Nat L. Hardy and R. R. Smith, both of Jourdanton, for plaintiff in error.

Guinn & McNeill, of San Antonio, L. B. Wiseman, of Floresville, R. S. Shapard, of Dallas, Cobbs & Wiggin, of San Antonio, and Dabney & King, of Houston, for defendants in error.

STAYTON, J. The plaintiff sued the defendant and other common carriers for damages caused by the negligent delay of certain garden truck shipped by him in April and May, 1920, over their lines from a point in Texas to a point in Missouri, and obtained judgment for the full amount involved against each of them. The judgment also apportioned their rights and responsibilities as among themselves. The Court of Civil Appeals reversed the judgment in all respects. 246 S. W. 1060. Plaintiff does not question the decision except with regard to its effect as to the initial carrier.

[1] The Court of Civil Appeals noted that

---

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(261 S.W.)

the plaintiff did not sue the initial carrier alone, as he might have done under the Carmack (now Cummins) Amendment (U. S. Comp. St. §§ 8604a, 8604aa), but sued all of the carriers who handled the shipment, and held that, in this way, "Having pursued the remedy given him by existing law, without reference to the Carmack Amendment, he should be bound by that remedy, under which he must look to each carrier for the damages it caused." This decision of the Court of Civil Appeals is thought to be incorrect.

It will be observed from the petition that, however much of the damage and in whatever manner the plaintiff sought to recover against the connecting carriers, he distinctly averred that the San Antonio Southern Railway Company, the initial carrier, "for itself" accepted and undertook to transport the shipments from a point in Texas to a point in Missouri, that the freight was damaged by negligent delay in transportation, and that plaintiff was entitled to the full damages against the San Antonio Southern Railway Company.

The case as pleaded does, it is true, sue upon a joint undertaking; but it is also true that it sues upon an undertaking of the initial carrier in an interstate shipment "for itself." It cannot be said that the allegations that this defendant was also acting jointly with the other carriers and as their agent, as well as "for itself," would deprive plaintiff of his remedy under the statute, because the statute does not predicate liability upon a condition that the initial carrier be acting alone.

[2-4] There was no need of an allegation of the issuance of a through bill of lading, because, since the Cummins Amendment, which was in force when these shipments were made, a through bill of lading is dispensed with as a prerequisite to fixing liability against the initial carrier, the act in this respect being but declaratory of previous decisions of the United States Supreme Court. Moreover, the statute does not have to be pleaded any more than does any other law. And the fact that the shipper in this case sought recovery not only against the initial, but also against the connecting carriers, is not thought to furnish a case of election foreclosing relief under the statute, nor one of abandonment of it.

[5] The contention of election was in no manner made before the trial court; and it is impossible to say that plaintiff elected to hold each carrier for its own default and not the initial carrier under the statute for the whole damage, when, on the one hand, he nowhere alleged or sought a partial liability, and on the other hand he distinctly alleged and sought a full liability on the part of the initial carrier. It is, moreover, impossible to say that an election was in the one direction rather than in the other.

The plaintiff went to final judgment no more against the connecting carriers than against the initial carrier; but the judgment was against all for the entire damage. There is nothing inconsistent in the remedies plaintiff employed. Where several joint contractors or several joint tort-feasors are sued jointly, while only one full satisfaction may be had of them, their joinder does not work against a full judgment against each of them. Neither should such a result follow because some defendants, who may be required to respond only partly, are joined with another, who may be required to respond in full. There is nothing in the federal statute that tends to lessen the liability of the initial carrier that is imposed by it, or to render a joinder of allegations against connecting carriers a waiver of that liability; but, on the contrary, the statute saves to the shipper any remedy that he may have under the common law as recognized by the federal courts. It would seem that the shipper should not in all cases be confined either to the initial carrier or to the connecting carriers for his satisfaction. One or more of them may, by the time of execution, become inconvenient of approach, or, indeed, develop to be unable to respond.

Numerous Texas cases are cited in the application which evidence that it has been common practice in this state for shippers to sue all of the carriers possible to be brought in, and that, where liability was shown, they have at times recovered judgments against the initial carriers for the whole damage and against the succeeding carriers for their own defaults. In such a situation the Court of Civil Appeals at Amarillo, in an opinion by Chief Justice Huff, ruled that plaintiff "may sue the initial carrier, together with the connecting carriers." Atchison, T. & S. F. Ry. Co. v. Word, 159 S. W. 375. The Supreme Court refused a writ of error in that case. Justice Hodges expressed the opinion that the initial carrier could be held liable in a joint suit, regardless of its negligence, in Texas Cent. Ry. Co. v. Hico Oil Mill, 62 Tex. Civ. App. 620, 132 S. W. 381. And Chief Justice Huff, in Atchison, T. & S. F. Ry. Co. v. Boyce, 171 S. W. 1095, had before him a case exactly like the present one, and, speaking for his court, said of it:

"The act was passed for the benefit of the shipper. He can sue the initial carrier alone or any one of the connecting carriers, or all jointly, for the damages. Railway Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Railway Co. v. Ray, 127 S. W. 281; Railway Co. v. Word, 159 S. W. 375; Railway Co. v. Ward, 169 S. W. 1035. We do not undertsand that an election can be required where a party's rights are analogous, consistent, or concurrent. As we understand, under the Interstate Commerce Act, the contract is made by the initial carrier for all connecting carriers, by the terms of which each and all are bound, and a

failure of duty or the negligence of either gives the shipper a right of action against either or all under the act against the initial carrier for all the damages and the connecting carriers for the damages occurring on their respective lines."

These decisions are in harmony with numerous declarations upon the part of the Supreme Court of the United States, the effect of which may be stated in this manner: [6-9] All state laws inconsistent with the federal act are, as to interstate shipments, no longer in force. As to such a shipment the federal act renders the initial carrier liable for breach of duty on the part of any of its connecting carriers as well as on its own part, not only for ordinary damage or injury caused by it or them, but also for damage or injury caused by negligent delay whether resulting in physical injury to the freight or not. This liability and the valid clauses of the bill of lading are, moreover, not ordinarily subject to waiver on the part of either the carrier or the shipper. The connecting carriers, as to an interstate shipment, are the agents of the initial carrier and the bill of lading is a through contract on the latter's part. The bill of lading also measures the liability of the connecting carriers to the shipper under existing federal law and the common law as applied in the United States courts; and the shipper may have recourse against each of them for its own defaults as well as against the initial carrier for its entire obligation. And, finally, a through bill of lading is conclusively deemed to have been issued although in fact none was issued. Atlantic Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Kansas City So. Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Mo. Kan. & Tex. Ry. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Cleveland, Cincinnati, Chicago & St. L. Ry. Co. v. Dettlebach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453; New York, P. & N. R. R. Co. v. Peninsula, etc., 240 U. S. 34, 36 Sup. Ct. 230, 60 L. Ed. 511, L. R. A. 1917A, 193; Georgia, Fla. & Ala. Ry. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948; Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; Missouri, K. & T. Ry. Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213; Chicago & N. W. Ry. v. Whitnack Co., 258 U. S. 369, 42 Sup. Ct. 328, 66 L. Ed. 665.

[10] The final carrier was held liable in the last case cited because it caused all of the damage, under the familiar presumption that the loss occurs in the hands of the last carrier unless otherwise proved. Answering a suggestion that the shipper's remedy was against the initial carrier upon its statutory liability and could not be against the final carrier under this presumption, the United States Supreme Court said:

"There are adequate reasons why shippers should have the benefit of both; and we think Congress so intended."

The Ward Case, above cited, was one where all of the carriers were sued for damages to a shipment of cattle, without mention being made of the Carmack Amendment. The initial carrier was relieved of liability by the trial court, and a succeeding carrier obtained writ of error to a Texas Court of Civil Appeals, which had held the latter carrier liable for its own acts. It defended under certain clauses of a bill of lading issued by it at an intermediate point on the route, and also contended that by accepting this bill of lading the shipper waived his rights under the federal law. The federal Supreme Court decided to the contrary. After stating the full liability of the initial carrier, the opinion continued:

"While the receiving carrier is thus responsible for the whole carriage, each connecting road may still be sued for damages occurring on its line; and the liability of such participating carrier is fixed by the applicable valid terms of the original bill of lading. The bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation. The terms of the original bill of lading were not altered by the second issued by the connecting carrier. As appellants were already bound to transport the cattle at the rate and upon the terms named in the original bill of lading, the acceptance by the shipper of the second bill was without consideration and was void. * * * For the purpose of fixing the liability, the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become in effect mere agents, whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier. * * * The railway companies also contend that the acceptance of the second bill of lading operated as a waiver of all rights thereafter accruing under the first. The record discloses no evidence of intention to make such a waiver and there was no consideration for it. Furthermore, as stated in Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U. S. 190, 197, 'the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act. * * * A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed.'"

The Supreme Court of Texas granted the present application for writ of error upon the basis of the decision in Missouri, K. & T. Ry. Co. of T. v. Grain Co., 103 Tex. 542, 131 S. W. 412. The court had before it there a case where in an interstate ship-

ment the plaintiff had sued both the initial and a connecting carrier. For lack of evidence of liability on the connecting carrier's part, the court reversed the judgment (which was against both of the carriers in the full amount) in so far as it affected the final carrier, but decided that the initial carrier was "liable by Act of Congress of June 29, 1906, c. 3951, § 7, for the entire loss." The citation is to the Carmack Amendment.

It follows from these controlling decisions that the joinder of all of the carriers in this suit did not deprive the plaintiff of his remedy against the San Antonio Southern Railway Company under the act of Congress formerly known as the Carmack Amendment and at present known as the Cummins Amendment.

[11] The San Antonio Southern Railway Company contends, however, that the judgment against it was contrary to the verdict of the jury, and invaded the province of the jury. The decision of this question requires a statement of the nature of the verdict.

The case was submitted to the jury on special issues in accordance with a request of the defendants. The answers of the jury clearly establish that the shipments were made over the line of the San Antonio Southern Railway Company as initial carrier and over the lines of other defendants, from a point in Texas to a point in Missouri, and were damaged by the negligence of one or more of the defendants in delaying them in transit and thus subjecting them to a fall in price and to deterioration, so that plaintiff, under the measure submitted by the judge, was damaged in the sum of $3,582.49. Moreover, the judge instructed the jury to ascertain which of the defendants actually caused the damage, and on that basis to answer how much of the total damages should be paid by each defendant. The jury accordingly answered (without mentioning the initial carrier) that the last three carriers should respond.

As stated, the initial carrier, the defendant that was omitted from this answer, contends, upon the basis of it, that, the jury having found in its favor, the court had no authority to render a judgment against it. If defendant's supposition that the jury found in its favor is correct, there can be no doubt that upon statutory grounds, with some exceptions not necessary to discuss, defendant's conclusion is the law. But whether the supposition is correct depends upon what actually was the verdict of the jury. Actually and plainly the verdict of the jury was (as is also shown by the whole record and the evidence) that an interstate shipment originating on this defendant's line was damaged by the negligence of some of the carriers who transported it to destination. Under the law and the authorities, this rendered the initial carrier liable for the total amount of the damages, whether the judge or jury, at the time of the verdict, were of that opinion or not. And as a matter of law their opinion to the contrary or the instruction and finding of a contrary conclusion on the basis of an opinion to the contrary were entirely immaterial. These amounted legally to nothing. Consequently, as the trial judge finally decided, this verdict, from the standpoint of the initial carrier, could only have one legal meaning, and that was that the initial carrier was responsible for the whole sum. The judgment upon that basis is not contrary to the verdict of the jury, but is supported by it, "inasmuch as * * * the judgment is not in conflict with the findings upon material issues." Kelley v. Ward, 94 Tex. 294, 60 S. W. 311; McKinney v. Nunn, 82 Tex. 44, 17 S. W. 516; Roberts, etc., v. Sun Mutual Ins. Co., 19 Tex. Civ. App. 338, 48 S. W. 561; Patterson v. Allen, 50 Tex. 23.

This disposes of the points raised.

[12] It has been suggested, however, that if plaintiff's judgment against the San Antonio Southern Railway Company be affirmed an injustice to that company may result, in that it will be compelled to pay at one figure with the risk that, in further litigation to adjust proportionate liability with its connecting carriers, it may be forced to settle upon the basis of a lower figure. It is considered, however, that the Cummins Amendment fixes as the measure of such a settlement the amount of the judgment which the defendant pays. That amendment, after making the initial carrier liable for the whole damage to an interstate shipment, provides that it "shall be entitled to recover from the common carrier * * * on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay * * * as may be evidenced by any receipt, judgment, or transcript thereof."

The amount that the initial carrier is required to pay is thus the express measure of the adjustment as between the initial and the connecting carriers. To hold that the initial carrier may make a certain payment under compulsion and then stand the risk of having the amount of it disputed in a settlement with any offending connecting carriers would be to render the act subject to unreasonable and confiscatory ends, which such authorities as have mentioned the subject do not sustain. Atlantic, etc., Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; T. & P. v. West (Tex. Com. App.) 207 S. W. 921; Kansas City & M. Ry. Co. v. New York C. & H. R. R. Co., 110 Ark. 612, 163 S. W. 171; Carlton v. Velasco, etc., Co. (Tex. Civ. App.) 131 S. W. 1187; Hill v. New York, etc., R. R. Co., 94 Misc. Rep. 118, 158 N. Y. Supp. 1084; Id., 179 App. Div. 927, 166 N. Y. Supp. 1097.

The case cited from the Supreme Court of

Arkansas is a broader case than the present one from the standpoint of the predicate authorizing reimbursement, but, for the more reason, forces the conclusion above announced, if indeed the statute itself would need to be supplemented. In that case a payment of damages on account of a misdelivered shipment was made by the initial carrier, not after judgment, but voluntarily and before suit. Settlement having in this manner been made with the shipper, the initial carrier sued a connecting carrier for the amount of the payment, upon the theory that the conversion occurred at the hands of the latter. That carrier on appeal complained that the trial court erred in excusing the plaintiff company from making proof of the value of the goods. The Supreme Court ruled, however, that no such proof was necessary, but that the receipt for payment from the shipper was sufficient to make out the claim. A part of the opinion is quoted:

"It was the purpose of Congress by the Carmack Amendment to the Hepburn Act to make the initial carrier liable for loss caused by it, or any connecting carriers, and to give the initial carrier, after it has been required to pay the loss, a remedy over against the particular connecting carrier causing the loss, for the amount paid by the initial carrier as evidenced by 'any receipt,' etc. See Atlantic Coast Line v. Riverside Mills, 219 U. S. 186. * * * The provision was intended to make the remedy of the initial carrier as complete and convenient as possible, and therefore the act provides for the simple, easy and direct method of establishing the amount of the claim by the receipt showing the payment. The amount of the receipt establishes the amount of the claim of the initial carrier, and in the absence of fraud * * * is conclusive thereof."

That decision rules more than is necessary in the present case; but from it one may clearly see that a bona fide payment made by the initial carrier upon a judgment against it is necessarily conclusive as between that carrier and its connecting carriers, and leaves to further adjustment only the allocation of the responsibility for the loss or damage thus ascertained and fixed.

[13] The decision also suggests that the statute may occasion some risk upon the part of the initial carrier. But when this view of the act was pressed upon the Supreme Court of the United States as a reason why the law should be held unconstitutional that court, in the above-cited case of Atlantic Coast line v. Riverside Mills, replied:

"That there is some chance that this right of recoupment may not be always effective may be conceded without invalidating the regulation. If the power existed and the regulation is adapted to the purpose in view, the public advantage justifies the discretion exercised and upholds the legislation as within the limit of the grant conferred upon Congress."

The court proceeded to hold that the power to pass the act existed, that the public advantage justified it, and that consequently the act was not unconstitutional.

In any instance of an adjustment of liability between successive carriers under the Carmack Amendment, or its extension, the Cummins Amendment, some degree of hardship is possible of occurrence, not only on the part of the initial carrier, but also on that of the connecting carriers. Congress, however, with the concurrence of the Supreme Court of the United States in decisions already cited and other decisions, has resolved that it is not a practical hardship, and that, even if it were, common carriers of interstate freight are so interrelated respecting business arrangements as to make it just, politic, and valid, especially in the light of the fact that these concerns are affected by a public use. The regulation is only an intermediate expression of a broad public policy that began its development most notably with the establishment of the Interstate Commerce Commission, and from then on served to withdraw from carriers of interstate freight the freedom to make rates and contracts and the freedom of internal administration and management, and, within late years, has made possible a degree of regulation as to intrastate rates, and even compelled carriers to transfer into other hands the earning of their properties above a certain rate of return.

In this setting, and as thus construed, the statutory provision under consideration undoubtedly places the duty upon all courts that entertain controversies under it to abide by the procedure that is expressed in it. For these reasons it is considered proper and necessary to follow that course in the case at bar by reversing the decision of the Court of Civil Appeals as to plaintiff's judgment against the San Antonio Southern Railway Company and affirming such judgment, in its accurate amount, as rendered in the trial court. Over the remainder of the judgment of the Court of Civil Appeals the Supreme Court, in the state of the record, has no jurisdiction, and consequently it cannot be disturbed.

[14] There was a discrepancy in plaintiff's judgment against the San Antonio Southern Railway Company that was the subject of statutory remittitur on plaintiff's part. The jury's finding of $3,582.49 damages, as a whole, was in excess of the sum of the amounts of damage found by them as to the several carloads that were shipped by defendant. The excess amounted to $376.45. The judgment was for the larger amount, and hence included this excess. Any conflict in these findings was cured, it is considered, by the remittitur which was for $376.55, and was filed within the time required by R. S. art. 2012. If it should be that plaintiff may be charged with the omissions of the clerk in respect to his duties upon the filing

of this paper, and that consequently the remittitur was not legally sufficient, nevertheless, in view of the fact that plaintiff did what was required of him, and that the difficulty may be easily rectified, it is not thought that plaintiff should be at any disadvantage as to the disposition of the case in the Supreme Court. It is due the Court of Civil Appeals to say that the copy of the remittitur in the transcript is not indicated by the index.

We recommend that the part of the judgment of the Court of Civil Appeals reversing the plaintiff's judgment against the San Antonio Southern Railway Company be reversed, that the judgment of the district court in behalf of plaintiff against that defendant be reformed so that the principal sum of it shall be and read $3,205.94, instead of $3,582.49, and that such latter judgment, as so reformed, be affirmed; that the judgment of the Court of Civil Appeals be in all other respects affirmed; and that the costs of this court be adjudged against the San Antonio Southern Railway Company.

CURETON, C. J. So much of the judgment of the Court of Civil Appeals as reverses the judgment of plaintiff in error against San Antonio Southern Railway Company is reversed. Judgment for plaintiff in error against San Antonio Southern Railway Company in district court is reformed in amount so that plaintiff in error receives of that company $3,204.94, instead of $3,562.49, and, as reformed, is affirmed. Judgment of Court of Civil Appeals in all other respects is affirmed. All as recommended by the Commission of Appeals.