RAILWAY EXPRESS AGENCY, INC., and
American Airlines, Inc., Appellants,

v.

John L. MILLER and Fay Miller d/b/a
Centex Turkey Hatchery, Appellees.

No. 10842.

Court of Civil Appeals of Texas.

Austin.

May 10, 1961.

Rehearing Denied May 31, 1961.

Arthur P. Bagby, John C. Foshee, Austin, for appellant Ry. Express Agency, Inc.

Buck & Buck, Robert P. Clines, Fort Worth, for appellant American Airlines, Inc.

Lawrence L. Bruhl, Llano, L. Hamilton Lowe, Austin, for appellees.

GRAY, Justice.

Appellees, John L. Miller and Fay Miller, doing business as Centex Turkey Hatchery, sued appellants, American Airlines Incorporated and Railway Express Agency, to recover damages sustained to a shipment of 3,000 turkey poults.

Appellees delivered the poults to American at Fort Worth for shipment to the Idaho Poultry Company at Boise, Idaho. At that time American received the poults and issued to appellees an air-frieght uniform air bill reciting that the poults were consigned by appellees to Idaho Poultry Company at Boise, Idaho. It recited:

| "Destination Airport City | Consignee's No. |
|---|---|
| At Portland, Oregon | |
| Routing: Airline Routing Applies Unless Shipper Inserts Specific Routing Here | |

\* \* \* \* \* \*

"It is mutually agreed that the goods herein described are accepted in apparent good order (except as noted) for transportation as specified herein, subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs, copies of which are available for inspection by the parties hereto, are hereby incorporated into and made part of this contract. /

\* \* \* \* \* \*

| "No of Pieces | Description of Pieces and Contents | Weight |
|---|---|---|
| 30 | Boxes Broadwhite Turkey Poults | 450# |
| | (Live Baby Poults 100 per box) | |
| | Instructions to Carrier | |

Leave Amon Carter Field via American Air Frt. Arrive at Portland, Oregon airfield—Advise Railway Express to pick up, truck direct to Boise, Idaho."

The poults were received by American at 8:40 p. m. on April 22, 1957 and were carried by it to Los Angeles, California where they were delivered to Flying Tigers, another air carrier but not a party here, at 7:50 a. m. on April 23, 1957 and were then carried to Portland, Oregon where they were delivered to Railway Express on April 25 at about 6:30 or 7:30 a. m. and on that day were delivered to Idaho Poultry Company at Boise, Idaho at about 10 o'clock p. m. No representative of appellees accompanied the shipment.

Within a short time after the poults were delivered to Railway Express (not more than 45 minutes) one of its employees said his attention was called to the shipment. He said:

"A. My attention was called to this shipment from the odor from them, and I opened the boxes—there were several of them—and looked at them, and they were in a dying condition and lots of them were already dead. That was possibly within 45 minutes after they

had come from the airport. I called Mr. Lemme's attention to the condition of the shipment. He is the terminal supervisor. Later they were loaded on the train I was going out on, U. P. Train 12."

Another witness said he could tell that the poults had been dead quite a while due to their condition.

The poults were carried by train from Portland to Huntington, Oregon and from there by truck to the consignee at Boise accompanied by an employee of Railway Express. A total of 1,838 poults died before delivery and 600 afterwards. Their stipulated value was 55 cents each.

At a nonjury trial a judgment for appellees for $1,010.90 against appellants jointly and severally was rendered.

The trial court filed findings of fact and conclusions of law. However the facts are not in dispute but the contentions of appellants are to the effect that such facts do not show them to be liable.

The transportation of the poults from Fort Worth to Portland was by air and the fact that they were transported from Portland to Boise by a land carrier would not change the character of the shipment from air commerce. 49 U.S.C.A. § 171, that section being in effect at the times relevant here. Also appellants are common carriers. Arrow Aviation, Inc. v. Moore, 8 Cir., 266 F.2d 488, 73 A.L.R.2d 337. 6 Am.Jur., Aviation, p. 30, Sec. 47. Also Secs. 45 and 58.

49 U.S.C.A. § 483, as effective at all relevant times, required air carriers to file tariffs with the Civil Aeronautics Board. When so filed and approved by the Board the tariffs become a part of the transportation contract.

The portion of the tariffs relied on by American is:

"Rule No. 3.2

"(a) The carrier shall not be liable for loss, damage, delay or other result caused by:

1. * * * perils of the air * * *

3. The nature of the shipment, or any defect, characteristic or inherent device thereof.

"(b) The carrier shall not be liable for loss, damage, deterioration, destruction, theft, delay, default, misdelivery, non-delivery or any other result not caused by the actual negligence of itself, its agents, or employees, acting within the scope of their authority, or not occurring on its own line or in its own service or for any act, default, negligence, failure or omission of any other carrier or any other transportation organization."

American accepted the poults at Fort Worth and then contracted for transportation of the poults from Fort Worth to Boise. This contract was for through interstate transportation. 11 Tex.Jur.2d Sec. 689, p. 475. In so doing American elected to treat connecting carriers as its agents for the transportation and delivery of the poults. Atchison, T. & S. F. Ry. Co. v. Word, Tex.Civ.App., 159 S.W. 375. Er. ref. The connecting carriers undertook the transportation and delivery of the poults under the contract made for them by their principal, American. Burd v. San Antonio Southern Ry. Co., Tex.Com.App., 261 S.W. 1021. Gulf C. & S. F. Ry. Co. v. Hines, Tex.Com.App., 250 S.W. 1013. It is on this contract that appellees sued.

American carried the poults to Los Angeles and there delivered them to Flying Tigers for transportation to Portland. Thereby American adopted Flying Tigers as its agent to transport the poults from Los Angeles to Portland. Gulf, C. & S. F. Ry. Co. v. Hines, supra. Atchison, T. & S. F. Ry. Co. v. Word supra, citing Atlanta Coast Line Ry. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 169, 55 L.Ed. 167, 31

L.R.A.,N.S., 7. There the Supreme Court of the United States said:

"Reduced to the final results, the Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one state, to be transported to a point in another, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route, with the right to reimbursement for a loss not due to his own negligence."

The contract made by American for through transportation and delivery of the poults inured to the benefit of connecting carriers and their liability is to be measured by its terms. Atchison, T. & S. F. Ry. Co. v. Word supra and authorities cited at page 380 of 159 S.W., column 2.

American says that a recovery against it cannot be sustained because under the applicable tariffs its liability is limited to acts of negligence, or causes of damages occurring on its own line. This would be a construction of the tariffs too strict and too narrow for application to the facts here. It would compel the selection of one provision of the tariffs to the exclusion of the other provisions of equal dignity. The tariffs in part provide that the carrier shall not be liable for damages "not caused by the actual negligence of itself, its agents * * * or not occurring on its own line or in its own service, or for any act, default, negligence, failure or omission of any other carrier or any other transportation organization." American's contention is contrary to the provision of the tariffs that it is liable for results caused by itself, its agents, and to the lawful fact that by issuing the contract for through transportation it adopted connecting carriers as its agents. Moreover if the tariffs must be construed then such construction is to be against the carrier. Gulf, C. & S. F. Ry. Co. v. Hines, supra.

We recognize of course that we are concerned with an interstate shipment for which reason federal and not state law governs.

American appears to say that damage to the poults may have been caused by "perils of the air." We are not cited to, and do not find, a definition of that term. However it appears to us and we hold that perils of the air as used in the tariffs does not mean merely dangers and hazards of air travel but as used it means accidents or perils that arise from the elements and which could not be prevented by the exercise of skill and care by the crew operating the plane. In that respect we think the term is similar in meaning to "perils of the sea." In Norris Grain Co. v. Great Lakes Transit Corporation, 7 Cir., 70 F.2d 32, 34, it is said:

"A 'peril of the sea' is that danger that comes when wind and wave in their fury work their will with ship and cargo after the owner has used all reasonable effort to make the ship sea worthy and well qualified to withstand those hazards and perils that the owner knows or has reason to believe must be encountered."

There is no evidence as to any perils of the air and if presumptions are to be indulged it must be against the carrier. 11 Tex.Jur.2d Sec. 700, p. 490.

American does not appear to urge the provision of the tariffs as to the nature of the shipment. However the facts fully rebut such contention if it were made.

If it be said that the applicable tariffs limit the liability of carriers contrary to prior law, See: 11 Tex.Jur.2d Sec. 688, p. 471 and contrary to the Carmack Amendment, 49 U.S.C.A. § 20(11) and (12) American is not thereby relieved because by the contract it made with appellees it adopted other participating carriers as its agents and the tariffs provide liability for damages caused by the negligence of "itself, its agents."

■ Here the evidence shows that turkey poults, after hatching, live seventy-two hours without food or water; that the death of the poults was not caused by lack of food or water, and it is sufficient to support the trial court's finding that the poults were hatched April 22, were delivered on that day to American, free of disease, in good condition and properly packed for shipment. The evidence shows without dispute that upon arrival at Portland, or at any rate within forty-five minutes thereafter, some of the poults were dead and others were in a dying condition. This evidence shows that the cause of death and the then existing dying condition resulted prior to that time. If the odor from the shipment that attracted Railway Express Agency's employee and the fact that they had been dead for some time are considered then the foregoing statement is strengthened. From this evidence it must be said that the cause of death was caused by American or its agent Flying Tigers. This evidence also sustains a presumption that the negligence of American or its agent Flying Tigers caused the damage to the poults. Since the presumption is not rebutted a judgment against American must be sustained. Texas & N. O. Ry. Co. v. East, Tex.Civ.App., 57 S.W.2d 175.

American cites us to Modern Wholesale Florist v. Braniff International Airways, Inc., Tex.Civ.App., 342 S.W.2d 225. Er. Gr. The facts of that case distinguish it from the case here. There the suit was against Braniff for damage to two shipments of flowers. The flowers were delivered to United Airlines, Inc. in California and were transported by it to Denver, Colorado and from there to Fort Worth by Braniff where it was found they were in a damaged condition. The Florist was denied a recovery of damages by sustaining Braniff's motion for summary judgment.

Braniff defended on a tariff similar to the one before us and

"In answer to appellee's requests for admissions, appellant said that it did not have within its knowledge sufficient information either to admit or deny that it was unable to ascertain at what time and place the damage to the flowers occurred. On motion by appellee the court entered an order that appellee's requests for admissions that appellant was unable to show when and where the damage occurred was deemed admitted."

Further than the statement supra the evidence is not shown. On appeal the Florist invoked res ipsa loquitur and asserted that Braniff and United were engaged in a joint enterprise. The court held there was no issue of a material fact and affirmed the judgment of the trial court.

The suit was against the terminal carrier Braniff, United, the initial carrier, was not a party, the transportation contract was not referred to and no question of the agency of any carrier is mentioned. We think the decision is not decisive of the question presented here.

Other authorities cited by American such as Wadel v. American Airlines, Inc., Tex. Civ.App., 269 S.W.2d 855, Er. dism. agr., were suits for damage for loss of personal property accepted by the airlines for transportation as baggage without declaring and paying for a value in excess of $100 the amount limited to each passenger by the tariffs. These cases are not in point here except insofar as they hold that tariffs, when filed and approved by the Civil Aeronautics Board become a part of the contract of transportation.

We hold that liability for the loss sustained by appellees is shown as against American.

■ In applying the law to the facts before us for testing the liability of Railway Express for damage to the shipment of poults such liability cannot be sustained because: (1) If the contract for through transportation of the poults was binding on Railway Express then the tariffs were a part of that contract and since the evidence

shows that the cause of death originated prior to its possession of such shipment and shows proper handling of such shipment by it, then it is shown that damage did not result from causes occurring on its line and under the tariffs it is not liable. (2) Regardless of any rule of law and any presumption making Railway Express liable as a terminal carrier. the evidence supra exonerates it from negligence. Panhandle & S. F. Ry. Co. v. Wilson, Tex.Civ.App., 135 S.W.2d 1062. Er. dism.

Insofar as the judgment of the trial court awards a judgment against American it is affirmed. In other respects it is reversed and judgment is here rendered that appellees take nothing against Railway Express. The costs of this appeal are taxed against American.

Affirmed in part and in part reversed and rendered.